CLARK et al. v. TABERS, Inc.

No. 11071.

Court of Civil Appeals of Texas. Dallas.

Nov. 5, 1932.

purpose of having repairs made on an article of jewelry. While in the store, a clerk, by the name of Harris, noticing a bracelet with a diamond setting worn by appellant, showed her a platinum brooch set with diamonds, which matched the bracelet, and wanted her to purchase same. Appellant was very much pleased with the brooch, which was priced at $875, but declined its purchase. On the date above given, appellant returned to the store to get the article of jewelry that had theretofore been left for repairs and was waited upon by Eugene Taber, one of appellee's officers. Taber had been informed by Harris that appellant was very much pleased with the brooch previously shown her, and the brooch was again brought from the stock for the purpose of renewing the offer of sale. The result of this attempted sale was that it was agreed that appellant should take the brooch home with her and show it to her father, Dr. Harrell, to ascertain if he would consent to its purchase. That evening, when Dr. Harrell was approached on the subject, he declined to examine the brooch and refused to consent to its purchase.

Harris, appellee's clerk, who first discussed with appellant the purchase of the brooch, died suddenly on the night of April 24, 1929, the night preceding the day the brooch was delivered into the possession of appellant. In consequence of his death, appellee's store was closed on the forenoon of April 26, 1929, the day of the Harris funeral, and was not opened until some time early in the afternoon, but was open for business from about 2 p. m. until closing time. Including the three officers, there were about fourteen employees in appellee's store. Appellant was only acquainted with Messrs. Eugene Taber, Hugh Taber, Miss Eidola Taber, and the deceased, Mr. Harris. The other employees she did not know. It had been the custom of this store to make sales of goods to members of Dr. Harrell's family, and charge same to him. The sales theretofore made and charged had been of small price compared to the sale price of this brooch.

On the day following the taking home of the brooch by appellant, she went in her car in the forenoon to Baylor Hospital to visit her mother, then a patient in such institution, and showed her the brooch which she carried with her pinned on her dress. After she visited her mother, appellant drove down town to fill an engagement to serve tea at the Junior League, between the hours of 11 a. m. and 2 p. m. At the close of her services at this place she was joined by W. H. Clark, Jr., to whom she was then engaged to be married, and about 2:15 p. m. they went to the garage, secured appellant's car, and Clark drove the car to the front of appellee's place of business, the car standing somewhat in the street from the curb, in front of the store.

J. P. Rice and W. J. Rutledge, Jr., both of Dallas, for appellant.

Mike T. Lively and E. F. Kucera, both of Dallas, for appellee.

JONES, C. J.

In a suit in the county court of Dallas county at law No. 2, appellee recovered judgment against appellant, Mrs. Martha Mildred Clark, in the sum of $725, with interest at 6 per cent. per annum from date, from which judgment this appeal is duly prosecuted. The term "appellant" will refer to Mrs. Clark, as her husband, W. H. Clark, Jr., is only a pro forma party. The following are the facts:

On April 25, 1929, appellant was a single woman living with her father and mother, Dr. and Mrs. Whitfield Harrell. On such date, and for many years previous thereto, appellee had operated in the city of Dallas a retail jewelry store, and Dr. Harrell, with members of his family, were general customers of the store. Some days previous to such date, appellant had visited appellee's store for the

Appellant alighted from the car, went into the store, where she saw only one person, described as a middle-aged man of medium size, a brunette, wearing glasses, who stood behind a sales counter some little distance from the front of the store. She did not see any of the Tabers in the store at this time, nor any other person. The Messrs. Taber usually left the store for lunch at about 2 p. m. She informed the person thus described that she had come to return the brooch that she had carried from the store the day before, for what resulted in a futile effort to secure her father's consent to its purchase, delivered the brooch to this person, and requested him to tell Mr. Eugene Taber of the fact of its return. She immediately returned to the car and was driven home. This is appellant's testimony as to the delivery to appellee of the brooch, and it is corroborated by Mr. Clark in all respects, except as to the conversation had with the person to whom the brooch was delivered. Mr. Clark did not see this person, nor did he hear the conversation. Appellant's deposition was taken in this case in a law office, and a number of appellee's employees were paraded before her, but she refused to attempt to identify the employee to whom she gave the brooch, because she was uncertain that she could be positive in any such identification, and did not desire to reflect on any one, unless she could be positive in her identity. The brooch was never replaced in appellee's stock, and was never found. A number of the employees attended the Harris funeral, but had returned at the time the store opened in the afternoon.

It is a reasonable inference, and we find it as a fact, that all parties to the transaction considered the matter a closed incident; appellee believing that Dr. Harrell, because of the supposed retention of the brooch by appellant, had consented to its purchase and that the sale of the brooch for $875 had been made; appellant and Dr. Harrell believing that the brooch had been returned to and accepted by appellee, as ending negotiations for its sale. This status of the parties remained until the early days of June, when a bill for $875, covering the purchase price of the brooch, was sent to Dr. Harrell. No payment was made, on the ground that the brooch had not been purchased, but had been returned. Mrs. Harrell and appellant had conversations with the Tabers, in which the facts from their standpoint were set forth. The Tabers denied that the brooch had been delivered to any of their employees, and that by reason thereof claimed that the bill should be paid. City detectives and a private detective agency were consulted, the first by Mr. Clark, acting for appellant, and the second by appellee, but no report was ever made to any person in reference to the result of any investigation by such detectives.

The suit was instituted by appellee, after the marriage of appellant to Mr. Clark, against Dr. Harrell and appellant, Mrs. Clark, and against her husband, W. H. Clark, Jr., as a necessary pro forma party. Plaintiff sought recovery, first, on the ground that a sale of the brooch had been made and that Dr. Harrell, because of the custom theretofore followed by appellee and acquiesced in by Dr. Harrell, was liable for the purchase price, and also against appellant as the direct purchaser of the brooch. An alternative plea alleged, in effect, the delivery of the brooch on a conditional sale, the condition being that the father, Dr. Harrell, should give his consent thereto; that having thus obtained possession of the brooch, it was wrongfully and unlawfully applied to their use and benefit, and that they were thereby guilty of conversion of same; that its reasonable market value at the time of its conversion was $875.

Appellant and Dr. Harrell defended on the ground that the brooch had been delivered to appellant, on the insistence of appellee, for the purpose only of securing the consent of her father to its purchase, that her father declined to consent to its purchase, and that it was returned to appellee, or to some one appellee had clothed with apparent authority to accept the brooch, and that there was neither a sale of the brooch to them, nor its conversion by them.

The case was tried to a jury, and, there being no evidence to raise any issue of liability against Dr. Harrell, either for the alleged purchase price of the brooch or for its reasonable cash market value, at the time of its alleged conversion, the court properly gave peremptory instruction to the jury in his favor. There was no evidence raising an issue as to appellant's liability as a purchaser of the brooch, and hence no issue on this phase of the case was submitted. The issue of appellant's liability for the reasonable cash market value of the brooch, on appellee's alternative plea of conversion, was submitted to the jury in the form of special issues, and, a verdict on such issues being returned favorable to appellee, the judgment above described was entered.

Appellant contends that the court was in error in refusing peremptory instruction in her favor, on the ground that the evidence conclusively shows that she had returned the brooch to appellee. To this contention we cannot agree. It is true that there is no direct evidence contradicting appellant's affirmative and positive evidence that she did return the brooch to some one in appellee's store, who apparently was a clerk, and as such authorized to receive it for appellee. There were no questions asked by appellant as to whether he was an employee, but, seeing him in a position behind the counter, appellant assumed that he was a clerk or salesman connected with the store. Appellee, through its officers, gave affirmative testimony that no person of the de-

scription given by appellant of the one to whom she gave the brooch was employed in any position in the store. Appellee's three executive officers, all of whom worked in the store, and two of the employees, each testified that the brooch was not returned to either of them; the other employees were not called as witnesses. This evidence is sufficient to raise an issue as to the return of the brooch to an agent or employee of appellant, or to some one who had been permitted by appellee to be in the position in its store of an apparent employee. The assignment of error on this issue is overruled.

■ Appellant also contends that, under the evidence in this case, she was only a gratuitous bailee of the brooch, when it was delivered into her possession. To this we cannot agree, for the reason we believe the evidence of both appellant and appellee shows that the bailment was for the mutual benefit of both parties, and hence not a gratuitous bailment. On the one hand, appellee delivered possession of the brooch to appellant in an effort to consummate its sale, and to receive the benefit derived therefrom; on the other hand, appellant received possession of the brooch in the hope that she could secure the consent of her father to make the purchase, and to receive the benefit that would come to her from the purchase of the diamond brooch, which it appears she very much desired. The bailment had its origin in the combined effort of the two parties to consummate the sale of the brooch to one of them for the benefit of both, and is a bailment for the mutual benefit of the bailor and the bailee. Citizens' National Bank of Jasper v. Ratcliff & Lanier (Tex. Com. App.) 253 S. W. 253, and authorities therein cited; 3 R. C. L. 94. The assignment of error on this issue is overruled.

The question as to whether there was prejudicial error to appellant, in the manner in which the special issues were submitted to the jury, is a more serious one. This manner of submission was duly excepted to by appellant, and error is duly assigned on the action of the court in overruling such exceptions, and submitting the issues as framed. These issues are:

"(1) Do you find from a preponderance of the evidence that defendant Martha Mildred Clark, failed to return the diamond brooch involved herein to Tabers, Inc., its agents, servants or employees?

"(2) Do you find from a preponderance of the evidence that defendant, Martha Mildred Clark, failed to exercise ordinary care in the matter of returning the diamond brooch involved herein to Tabers, Inc.?"

■ To each of these issues the jury returned an affirmative answer, and the judgment decreeing appellee's liability for the reasonable market value of the brooch was determined by this verdict.

Under the first issue, the jury could have believed, under the evidence, that appellant returned the brooch to a person in appellee's store in a position of apparent authority to receive same from her, but, because they further believed that such person was neither actually an agent, servant, or employee of appellee, would be compelled to answer such issue in the affirmative, thereby requiring appellant to reap the consequences of appellee's action in allowing a person to be in the position of an employee in its store, though not actually so engaged. Appellant's pleading raised the issue of the brooch being returned to appellee's store to one apparently in its employ. The evidence of appellant tended to support such issue made by the pleading, and it was error for the court to overrule appellant's objection, and not to frame special issue No. 1 so as to include an apparent agent or employee, as well as an actual agent or employee.

■ Issue No. 2 is not responsive to any pleading by appellee, and hence the negligence of appellant as to the return of the brooch cannot be made an independent basis for recovery. Appellee seeks recovery only on two grounds: (1) That there was a sale of the brooch for $875; and (2) in the alternative, that there was a wrongful conversion of the brooch by appellant, rendering her liable for its reasonable cash market value. The duty, however, rested on appellant, when she undertook to return the brooch, to exercise ordinary care to make such return to an authorized agent or employee of appellee. In view of appellant's duty in this respect, and in view of her pleading to the effect that she returned the brooch by surrendering it either to an actual or apparent employee of appellee, if the court had included an apparent employee in the submission of special issue No. 1, we are of the opinion that the submission of the issue of negligence on the part of appellant, as an answer to her affirmative defense, that the brooch was returned to an apparent employee of appellee, would have been proper, but such submission should be restricted to the particular act of negligence in returning the brooch to such apparent employee, and should not be given in the general term used by the court in this issue.

■ Appellant complains that there is no proper evidence before the court to enable the jury to determine the reasonable market value of the brooch at the time it is alleged to have been converted. We overrule this assignment of error, for we think the evidence of Eugene Taber, as to the value of this brooch, as well as to the costs of material and labor that went into its making, clearly authorizes the finding of the jury on the market value. Taber testified that it was of the reasonable value of $875, the price asked for it. He further testified that the material en-

tering into the making of the brooch cost something over $600.

Appellant raises in her pleading the issue of the negligence of appellee in not earlier notifying appellant that the brooch had not been returned. We believe the evidence raises this issue. The undisputed evidence shows that not even a conditional sale of the brooch had been made when it was delivered to appellant. Before a sale could be consummated, it was understood that Dr. Harrell would have to make the purchase by agreeing to accept the brooch for appellant, and to become responsible for the purchase price of $875. Without receiving any word from appellant or Dr. Harrell, appellee waited approximately six weeks without having made any inquiry as to whether a purchase was to be made, and then sent a bill to Dr. Harrell for $875, on the assumption that the purchase had been made. No issue on this question was submitted to the jury, and none requested by appellant. We have only suggested that such issue is raised by the evidence, in view of another trial of the case.

It is therefore our opinion that this case must be reversed because of the errors above pointed out, and a new trial had in conformity to the views herein expressed. The judgment in favor of Dr. Harrell is not disturbed by this reversal.

Reversed and remanded.